

FILED

APR 29 2013

April 29 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Kathy Travis ) | |
| Plaintiff, ) | No, 11cv7911 |
| v. ) | Judge Elaine E. Bucklo |
| Triton College, et al ) | Magistrate Sheila M. Finnegan |
| Defendants. ) | |
| ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## FOR SUMMARY JUDGMENT

NOW COME the Plaintiff Kathy Travis, pro see and in accordance with Federal Rule of Civil Procedure 56 and file with The United States District Court for the Northern District of Illinois Local Rule 56.1, herewith submit her Memorandum of Law in support for Summary Judgment, and submit to and by their attorney Daniel E. Cannon of Kusper & Raucci Chartered @ 30 North LaSalle Street, Chicago, Illinois, 60602.

1. Introduction

Title VII of the Civil Rights Act of 1964 - Religious Discrimination A. Title VII of the Civil Rights Act of 1964 Title VII, 42 U.S.C. § § 2000e prohibits discrimination in hiring, pay, promotion, termination, compensation, and other terms and conditions of employment because of race, color, sex (including pregnancy), national origin, or religion. To be actionable, the employment decision must have been sufficiently adverse. Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006).

Title VII applies to all "covered" private employers, labor unions, education institutions and employment agencies. A covered employer must be a "person" (including a corporation, partnership, or any other legal entity) that has 15 or more employees for each working day for 20 or more calendar weeks in the current or preceding calendar year. 42 U.S.C. § 2000e(b). Ms. Travis will be able to show that Triton College has more than 15 employees working for it on any given day and is a "covered employer" under Title VII.

Title VII prohibits employers from treating applicants or employees differently because of their membership in a protected class. The central issue is whether the employer's action was motivated by discriminatory intent. This may be proved by either direct or circumstantial evidence.

Under the indirect method, the plaintiff follows what is referred to as the McDonnell Douglas burden-shifting formula. As discussed below, Ms. Travis will be able to use this method to demonstrate the prima facie elements for the following cases: termination, failure to hire, and failure to promote.

1. Prima Facie Case of Discriminatory Termination

To establish a prima facie discrimination case, the plaintiff must show "(I) he is a member of a protected class; (2) she was meeting his employer's legitimate performance expectations; (3) that she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated individuals who are not members of his protected class." Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 845 (7th Cir. 2007). Moreover, in a termination case, the plaintiff need not show a similarly situated comparator, but instead must show only that his employer sought someone else to do his work at after termination. Id. at 846.

A. Ms. Travis is a member of a protected class who suffered an adverse employment action and was likely replaced by another individual after her termination.

Title VII defines religion to include "all aspects of religious observance and practice...." 42 U.S.C. § 2000e(j). This includes organized religions such as Christianity. Ms. Travis, a Christian, is a member of a protected class for Title VII purposes. Ms. Travis was open about her faith and her coworkers had knowledge of her religion. Ms. Travis also suffered adverse employment

actions. An employment action is sufficiently adverse if the changes to an employee's terms and conditions of employment are material. <u>Washington v. Illinois Dep't of Revenue, 420 F.3d 658, 662 (7th Cir. 2005).</u> Ms. Travis' termination without a doubt materially changed the terms and conditions of her employment. See <u>Lewis v. City of Chicago, 496 F.3d 645, 653 (7th Cir. 2007)</u> (stating termination of employee is considered a materially adverse employment action). Furthermore, Ms. Travis will be able to show that Triton College sought someone else to do her work after her termination. Given the importance of her position, it is unlikely the AP department could operate without someone performing Ms. Travis' work.

B. The positive performance feedback and lack of documented performance issues suggests performance allegations behind Ms. Travis' recommendation for termination were pretextual.

Ms. Travis will be able to demonstrate that she was meeting Triton College's legitimate performance expectations. As discussed above, Ms. Travis had no performance issues while employed as a federal work-study. After working as a permanent employee, Ms. Travis did not receive performance evaluations and no negative performance issues were brought to her attention. In fact, the Defendants admit in their answers to No. 3 and No. 4 to Plaintiffs First Set of Interrogatories that there was no performance or disciplinary warnings prior to May 24, 2011. **(See Exhibit 4.)** Nevertheless, she received a memo alleging ongoing performance issues on May 24, 2011. This was approximately one month after she received a handful of glowing letters of recommendations from Senior Accountants and executives and four days after she applied to two other positions.

These fabricated performance issues lead to a sham due process hearing in which management, "C-level" executives because they represent the highest level of organizational management in the chain of command refused to consider Ms. Travis' evidence that contradicted the memo's allegations. These unsubstantiated allegations resulted in Ms. Travis being removed from her position and told to find a new job on campus or be fired. Given the positive feedback from one-month prior to receipt of the memo and the lack of documented performance issues, it is reasonable to assume that the due process hearing, reasons for recommending her termination, and ultimately terminating her, were discriminatorily motivated.

In addition, Ms. Travis will support the above by offering evidence of supervisor Mr. Sum Lau's March 2, 2011, request for Ms. Travis' peers to review her performance. **(See Exhibit4, Exhibit marked F and G).** These peer reviews were arbitrary and absurd. There was no indication as to why Mr. Lau requested these peer reviews. Mr. Lau even sent out reviews to employees Ms. Travis barely worked with, such as Robert Mungerson. **(Exhibit 4, Exhibit Marked G).** In fact, Mr. Sullivan stated during the due process hearing that evaluations for non-work-study employees were not required. Thus, if it was not standard to do general evaluations, peer reviews were likely unprecedented. Given that there was no basis or reason for the peer reviews, it is reasonable to assume that Mr. Lau's reasons for requesting the reviews were discriminatorily motivated.

Mr. Lau and Mayer wanted to remove Ms. Travis from the workplace because of her religious beliefs and practices. Mr. Lau also knew Ms. Stephens and Ms. Gajc's thoughts about Ms. Travis because Ms. Travis complained to Mr. Lau and Mayer about their discriminatory actions. However, Mr. Lau then asked them to review Ms. Travis' performance and used their reviews as a basis to set Ms. Travis up for disciplinary action. In addition Mr. Lau padded Ms. Travis' file "the numbered pages" with negative performance issues after the issue had been brought to federal court none of the mentioned emails were addressed on Mayer's memo.

2. Prima Facie Case of Discriminatory Failure to Hire

To establish a prima facie discriminatory failure to hire case, the plaintiff needs to demonstrate that (1) she belongs to a protected class, (2) she applied and was qualified for the job, (3) her application was rejected, and (4) the position stayed open after her rejection. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 505-507 (1993). As discussed above, Ms. Travis can show her protected class membership. She will be able to show that she applied for the position of Accounts Payable Clerk and her application was rejected and continued to remain open until made effective on July 5, 2011. Coincidentally was after the June 1, letter giving her 30 days to find a new position. Sullivan, Kennedy and Stadermann's resolve after the due process hearing was to make Ms. Travis seek out a new position after she had told them she applied to other positions on campus. The Secretary I and Student Personnel Clerk II positions; her applications were rejected because HR purposefully chose another applicants which closed the openings so that she could not secure one within 30 days.

Ms. Travis' lack of negative performance reviews prior to her termination and letters of recommendation from Senior Accountants and executives illustrate that she was a competent, and a qualified employee that at least deserved an interview. Given that Ms. Travis was qualified for the position of account clerk and closed out to the other two positions she was not given an opportunity to receive an interview, it is reasonable to assume that the failure to hire her was discriminatorily motivated.

3. Prima Facie Case of Discriminatory Failure to Promote

To establish a prima facie discriminatory failure to promote case, the plaintiff needs to demonstrate that "1) he belongs to a protected class, 2) he applied for and was qualified for the position sought, 3) he was rejected for the position and 4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff." Grayson v. City of Chicago, 317 F. 3d 745, 748 (7th Cir. 2003). As discussed above, Ms. Travis can show protected class status. Ms. Travis will be able to show that on April 27, 2011, she applied for the Account Clerk position. She was qualified for the position, but her application was rejected. Triton College ultimately hired Amelia DiGiacomo, who did not possess better qualifications than Ms. Travis.

Mr. Lau, Ms. Stephens' and Ms. Gajc were all on the search committee; Mr. Lau was chair and the search Committee Chair serves as liaison between the search committee, HR department. And schedules and chairs meetings and serves as head host for candidates on campus. After Ms. Stephens' promotion, she became Ms. Travis boss. The search committee is in charge of screening all applications, interviewing qualified candidates, and recommending a final candidate. After Ms. Travis applied, Ms. Stephens made harassing statements about Ms. Travis' performance and made false reports to Ms. Mayer that Ms. Travis was not doing her job. Ms. Stephen and Lau already harbored a religious bias towards Ms. Travis, both Lau, and Stephens was in a position to use their authority. Both Ms. Stephen and Mr. Lau used their authority to prevent Ms. Travis from securing the promotion because of her religion. Given that Ms. Travis was qualified but did not receive an interview and the online job posting state that internal candidates are given first consideration and even though qualified candidates were interviewed, it is reasonable to infer that the reasons behind not interviewing and not hiring her were religion-related.

In Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that traditional principles of agency law are relevant in determining employer liability under Title VII. The Court indicated an employer can be held directly liable for a supervisor's sexual harassment "where the employer acts with tortious intent, "or where the employer knew 1375*1375 or should have known about the harassment but failed to stop it.

Ultimately, the Court in Faragher and Burlington focused its attention on vicarious employer liability based upon a supervisor's misuse of delegated authority. The Court began its analysis by outlining what it termed "good reasons for vicarious liability for misuse of supervisory authority.

The conduct and discriminatory actions, and motives of Supervisors Lau, Mayer and Stephens as well as "C Level" executives are the issues here. It started with supervisor's Lau, Mayer and Stephen's and the material facts presented are all genuine and pertain to what went on in the accounts payable department.

WHEREFORE, the plaintiff prays and move this Honorable Court for summary judgment in her favor and for such further order or judgment or relief as may be just and proper.

Respectfully submitted,

BY: [signature]

Kathy Travis

1150 S. 15th Ave

Maywood, Il 60153